UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN EDWARD SHRADER,                          Case No. 11-13000

            Plaintiff,                 Julian Abele Cook, Jr.
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On July 13, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Julian Abele Cook, Jr. referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of supplemental security income benefits.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on November 17, 2006,  alleging that he

became unable to work on September 16, 2006. (Dkt. 9-5, Pg ID237-239). The claim was initially disapproved by the Commissioner on March 21, 2007. Plaintiff requested a hearing and on July 8, 2009, plaintiff appeared before Administrative Law Judge Lubomyr M. Jachnycky, who considered the case *de novo*. In a decision dated August 20, 2009, ALJ Jachnycky found that plaintiff was not disabled since November 17, 2006, the date the application was filed. (Dkt. 9-3, Pg ID 120). Plaintiff requested review on August 31, 2009. (Dkt. 9-4, Pg ID 205). On December 26, 2009, the Appeals Council vacated ALJ Jachnycky's decision and remanded the case to the Administrative Law Judge for further consideration. (Dkt. 9-3, Pg ID 122).

On July 15, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case *de novo*. In a decision dated October 18, 2010, the ALJ found that plaintiff was not disabled prior to July 13, 2010, but became disabled on that date and has continued to be disabled through the date of the decision. (Dkt. 9-2, Pg ID 48-61, at 53). Plaintiff requested a review of this decision on December 8, 2010. (Dkt. 9-2, Pg ID 46). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 9-2, Pg ID 43-44), the Appeals Council, on

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not

May 17, 2011, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 40-42);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 45  years of age at the time of the most recent administrative

hearing.  (Dkt. 9-5, Pg ID 237).  Plaintiff's relevant work history included

approximately 18 years as an assembler, frame builder, surface grinder and cleaner

and window builder/cutter.  (Dkt. 9-6, Pg ID 255).  In denying plaintiff's claims,

defendant Commissioner considered a learning disability, problems with memory,

diabetes, hypertension, severe gout, severe depression, carpal tunnel syndrome,

teeth falling out, blackouts and shaking, neuropathy in feet and legs, alcoholism,

and mood swings as possible bases of disability.   (Dkt. 9-6, Pg ID 254).

---

part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 16, 2006. (Dkt. 9-2, Pg ID 55). At step two, the ALJ found that plaintiff's gout; carpal tunnel syndrome; neuropathy in left foot; hypertension; diabetes mellitus; depression, and a substance abuse disorder were "severe" within the meaning of the second sequential step. *Id.* At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that prior to July 13, 2010, plaintiff could perform his previous work as a laborer/landscape and building frames. Beginning on July 13, 2010, plaintiff was unable to perform past relevant work. (Dkt. 9-2, Pg ID 59). At step five, the ALJ found that since July 13, 2010, there are no jobs that exist in significant numbers in the national economy that plaintiff can perform. (Dkt. 9-2, Pg ID 60).

   B.   Plaintiff's Claims of Error

Plaintiff claims that the ALJ did not follow the remand order issued by the Appeals Council. Specifically, the Appeals Council noted in its order that plaintiff had severe mental impairments but the RFC did not adequately account for these impairments. And, because of the moderate rating for social functioning and the finding of one or two episodes of decompensation, the Appeals Council indicated that consideration should have been given to a broader range of potential mental

limitations.  Plaintiff objects to the ALJ's ultimate determination that, while he had the severe impairment of depression, he only had mild restrictions in daily living, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  Plaintiff asserts that the ALJ deviates without explanation from the vacated decision, which concluded that plaintiff had moderate difficulties in concentration, persistence or pace.  Plaintiff also contends that the ALJ's discussion at Step 3 was not based on substantial evidence. Although the ALJ concluded that his mental impairment was severe, the ALJ did not adequately explain why plaintiff's disability reached the appropriate level of impairment on July 13, 2010 and not before that date.

Moreover, plaintiff's treating physician opined that plaintiff was unable to work as early as October 2008 but, according to plaintiff, the ALJ ignores the conclusions of plaintiff's treating physician, Dr. Sawalha, with whom plaintiff had been treating for bipolar disorder, anxiety, and depression since October 2008. Indeed, the July 13, 2010 opinion from Dr. Sawalha refers to treatment back to October 2008, yet the ALJ does not explain why he selected July 13, 2010 as the disability onset date.  Additionally, plaintiff claims that the ALJ failed to explain why he discounted the consistent hospital records, court documents, and plaintiff's mother's statement regarding his mental limitations, including details mental assessments and treatment at Detroit Central City from April 2008 through June

2010.  Plaintiff asserts that these records reflect his schizoid-affective disorder and its attendant symptoms.  According to plaintiff, these records clearly document that he met the functional limitations of Listing 12.04 B or C much earlier than the ALJ concluded.

### C.      The Commissioner's Motion for Summary Judgment

The Commissioner first asks the Court to reject plaintiff's argument that the ALJ "deviated without explanation" from the prior 2009 decision, and as a result of that "deviation" did not comply with the Appeals Council's remand order both when evaluating plaintiff's mental impairments and in determining the availability of other work at Step 5 of the sequential analysis.  According to the Commissioner, this argument misunderstands the nature of SSA's administrative appeals process.  Social Security regulations establish that an ALJ's decision is binding on all parties to the hearing unless the claimant files a timely request for review by the Appeals Council.  20 C.F.R. § 416.1455(a).  However, once a claimant seeks review by the Appeals Council, the entire decision becomes subject to review.  20 C.F.R. § 416.1470(b).  The Commissioner points out that ALJs inform claimants of this when they issue their decisions, as the ALJ who issued the 2009 decision informed plaintiff in this case.  (Tr. 67; "Requesting review places the entire record of your case before the Council.  Review can make any part of the decision more or less favorable or unfavorable to you").  Thus, the

Commissioner contends that, as soon as plaintiff filed his request for review, the ALJ's entire decision, both favorable and unfavorable parts, ceased to be binding on both plaintiff and the Commissioner.  The Commissioner also points out that the Appeals Council did not retain the prior decision, but vacated it.  (Tr. 82). Thus, the Commissioner urges the Court to conclude that the findings of the 2009 decision did not bind the ALJ who issued the 2010 decision on remand.

The Commissioner also argues that, consistent with the Appeals Council's remand order, the ALJ's hypothetical question to the VE appropriately accommodated all of plaintiff's mental limitations, including his ability to respond to work pressures, supervision, and ability to carry out simple instructions.  (Tr. 83).  The hypothetical also reflected plaintiff's impairments and work-related limitations to the extent that the ALJ found them supported by the medical evidence of record.  Therefore, the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion, at Step 4 of SSA's sequential analysis, that plaintiff retained the RFC to perform his past relevant work prior to July 2010.  And, because the ALJ found that plaintiff could perform his past relevant work, he was not required to proceed beyond Step 4.  20 C.F.R. § 416.920(e)-(f).

According to the Commissioner, plaintiff's contention that he experienced multiple episodes of decompensation during the period at issue should be rejected. Social security regulations define "episodes of decompensation" as "exacerbations

or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning."  "Repeated episodes of decompensation" means three episodes within a year, each lasting for at least two weeks.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C)(4).  Under the regulations, episodes of decompensation "may be inferred from medical record showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g. hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode."  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C)(4).  The Commissioner maintains that the ALJ correctly found that plaintiff had experienced no episodes of decompensation as the Act defines that term.  The ALJ noted that plaintiff had been hospitalized in 2007 when he overdosed on alcohol and his diabetes medication.  (Tr. 18; see Tr. 497-502).  On that occasion, while plaintiff was placed in a psychiatric unit, although he maintained that he was not suicidal, but had been drinking heavily after breaking up with his girlfriend, and took an excessive dose of diabetes medication in an attempt to counteract the effect of alcohol on his blood sugars.  (Tr. 497, 503). Hospital records noted that plaintiff had never previously been psychiatrically hospitalized, and had never seen a psychiatrist.  (Tr. 503).  He was discharged after three days.  (Tr. 497).  The ALJ also noted that plaintiff's mother also

petitioned to have him hospitalized after he told his psychiatrist he was

considering suicide and refused hospitalization.  (Tr. 18, 19; Tr. 381-84, 549-533).

Again, he was treated and released, and medical records showed that he improved

with treatment.  (Tr. 655-78).  According to the Commissioner, the ALJ correctly

observed that plaintiff was treated in emergency room and released on several

occasions for incidents relating to a combination of mental health and alcohol

issues.  (Tr. 18).  The medical records from 2007, 2008 and 2009 showed that

plaintiff responded appropriately to adjustments in his psychotropic medications,

especially when he was not drinking.  (Tr. 397-403).  The Commissioner contends

that the ALJ correctly concluded that none of these incidents, including the brief

hospitalizations, meet the Act's definition of an episode of decompensation.

According to the Commissioner, plaintiff raises only cursory challenges to

the ALJ's determination that he had mild limitations in his activities of daily living

and in his ability to maintain concentration, persistence, and pace, and moderate

limitations in social functioning.  For example, plaintiff argues that he met the

criteria of Listing 12.04 because the record includes instances where his

depression interfered with his ability to concentrate, but the Commissioner argues

that is not the relevant question.  Rather, it is undisputed that plaintiff was severely

impaired by depression throughout the period at issue (Tr. 16), which by definition

means that the depression significantly interfered with plaintiff's ability to engage

in work-related mental activities.  20 C.F.R. § 416.920(c).  However, having a

severe impairment is not equivalent to being disabled.  20 C.F.R. §§ 416.920, 945.

The ALJ explained that the evidence of plaintiff's daily activities showed that he

retained the ability to care for himself, prepare simply meals, take care of the

family pets, and baby-sit his five-year-old niece for extended periods.  (Tr. 16, 19).

The Commissioner also contends that the ALJ reasonably relied on the opinions of

the consultative and state agency reviewing psychologists, none of whom found

that plaintiff had more than moderate limitations in any area of functioning.  (Tr.

16, citing Tr. 311-15, 328-29, 336-53).  A moderate limitation is insufficient to

meet the criteria for Listing 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 12.00(B)(3).  As the ALJ noted, Dr. Mills found that plaintiff functioned in the

low average range of intelligence, and he had no difficulty staying on task during

testing.  (Tr. 19, citing Tr. 328-29).  The Commissioner also asserts that the ALJ's

decision is also fully consistent with the opinion of Dr. Kahdemian.  According to

the Commissioner, the record contains no medical opinions prior to July 2010 that

contradict the opinions on which the ALJ relied.  Thus, the ALJ properly applied

SSA's special technique for evaluating mental impairments, and reasonably

determined that Plaintiff did not meet the criteria for Listing 12.04.  Because

substantial evidence supports the ALJ's decision, it should be upheld.

     The Commissioner next argues that the Court should reject plaintiff's

complaints that the ALJ's decision that he was disabled as of July 2010, but not before, is arbitrary.  In making this claim, according the Commissioner, plaintiff relies largely on an assertion that he experienced multiple episodes of decompensation from 2007-2009.  The Commissioner contends that the ALJ reasonably used the July 2010 opinion of Dr. Sawalha, plaintiff's treating physician, to establish the onset of disability.  (Tr. 19-20).  Contrary to plaintiff's suggestions, the ALJ noted that Dr. Sawalha had treated plaintiff since 2008.  But, according to plaintiff, Dr. Sawalha's opinion does not say that plaintiff had been disabled since 2008, only that he had treated plaintiff since 2008.  According to the Commissioner, prior to  the 2010 opinion, nothing in Dr. Sawalha's notes suggests the presence of physical or mental limitations that would prevent plaintiff from engaging in substantial gainful activity.  (Tr. 393, 515-26).

The ALJ also noted that plaintiff's doctors reported that his mental impairment responded well to medication adjustments, and plaintiff himself reported several times that he was doing well and remained stable while he was taking his medications.  (Tr. 19, citing Tr. 409, 412-13, 634-45, 685-866).  These notes include, for example, reports that plaintiff's medications helped when he took them, that his anxiety was manageable, that a mental status exam showed that even while plaintiff was self-isolating his memory, attention and cognitive functioning remained intact.  (Tr. 634-45, 667-71).  The ALJ noted, however, that

although plaintiff managed to stop drinking in 2009, the records reflected a significant deterioration in his condition by July 2010.  (Tr. 19-20, citing Tr. 637-39, 708-13, 715-18).  Therefore, the Commissioner contends that the ALJ thus reasonably explained his conclusion that plaintiff was disabled as of July 2010, but not before.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

To the extent that plaintiff's arguments are based on the ALJ's alleged

failure to follow the Appeals Council's remand order, the undersigned concludes

that they are without merit.  As the court explained in *Pritchard v. Astrue*, 2011

WL 794997 (M.D. Tenn. 2011):

> The Regulations provide that "'the administrative law
> judge shall take any action that is ordered by the Appeals
> Council and may take any additional action that is not
> inconsistent with the Appeals Council's remand order.'"
> *Brown v. Comm'r of Soc. Sec.*, 2009 WL 465708, at *6
> (W.D. Mich. 2009), quoting C.F.R. § 416.1477(b). It is
> also "well established" that an Appeals Council's
> remand order is not a final decision of the
> Commissioner, *King v. Comm'r of Soc. Sec.*, 2010 WL
> 3210938, at *3 (W.D. Mich. 2010), citing *Weeks v. Soc.*
> *Sec. Admin.*, 230 F.3d 6, 7-8 (1st Cir. 2000) and *Duda v.*
> *Sec'y of Health & Human Servs.*, 834 F.2d 554, 555 (6th
> Cir. 1987), and that "[w]hether an ALJ complies with an
> Appeals Council order of remand is an internal agency
> matter which arises prior to the issuance of the agency's
> final decision." *Brown*, 2009 WL 465708, at *6.

Plainly stated, the court's scope of review "is limited to an analysis of the ALJ's

decision and not a review of the ALJ's compliance with the Appeals Council's

Order of Remand."  *Pritchard*, at *15, quoting *Peterson v. Comm'r of Soc. Sec.*,

2010 WL 420000, at *7 (E.D. Mich. 2010), citing *Riddle v. Astrue*, 2009 WL

804056, at *19 (M.D. Tenn. 2009); *see Dyer v. Sec'y of Health & Human Servs.*, 889 F.2d 682, 684 (6th Cir. 1989); *Brown*, 2009 WL 465708 at *6 ("By failing to remand the matter a second time, it appears the Appeals Council considered the ALJ's [decision] to be in compliance with the Council's previous order of remand [and] Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process."). Therefore, since an Appeals Council's order to remand is a function of inter-agency review and does not constitute a "final decision," this Court is precluded from determining whether the ALJ fully complied with the mandates set forth in the Appeals Council's remand order. *Pritchard*, at *15. Based on the foregoing, the undersigned concludes that plaintiff's argument that the ALJ did not follow the remand order is not reviewable by the Court. The question before the Court is simply whether the ALJ's decision is supported by substantial evidence.

The primary dispute in this case revolves around plaintiff's disability onset date. Social Security Ruling 83-20 governs the determination of disability onset date. Once a finding of disability is made, as it was here, the ALJ must determine the onset date of the disability. *McLanahan v. Comm'r*, 474 F.3d 830 (6th Cir. 2011), citing *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). As noted in *McLanahan*, the ruling states, in relevant part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20, at 1.  Further, the ruling states that "the medical evidence serves as the primary element in the onset determination."  *Id*. at 2.  In this case, the ALJ selected July 13, 2010 as the onset date, presumably because that is the date on which plaintiff's treating physician, Dr. Sawalha completed a statement of plaintiff's ability to perform work activities.  (Dkt. 9-12, Pg ID 765-768).  The ALJ apparently accepted Dr. Sawalha's opinions regarding plaintiff's functional abilities, both physical and mental,[2] finding plaintiff disabled as of that date.  The ALJ offered the following analysis of plaintiff's mental impairments:

> Prior to July 13, 2010, Claimant had impairments that limited, but did not preclude his ability to engage in basic physical or mental work activities.

> Claimant was admitted to the hospital, by way of petition, in November 2006 (Exhibits 2-F and 18-F).

---

[2]  Plaintiff's therapist also completed such a form in July 2010, although the ALJ does not appear to have relied on it, or even mentioned it, perhaps because it was completed by a limited license psychologist, who is likely not an "acceptable medical source." *See* SSR 06-03p; 2006 WL 2329939, at *1. Notably, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under [the SSA's] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. at *3.

Claimant's family reported Claimant had suicidal ideations. Claimant's history included diabetes, hypertension, gout and alcoholism. Claimant was noted to be intoxicated at the time of admission. Claimant was seen by a psychiatrist, and cleared for discharge the following day. Claimant was given a prescription for Effexor and diabetes and hypertension medication.

Claimant has been treated in area emergency rooms for incidents related to his alcohol use and/or mental health issues on a number of occasions in 2007 and 2008 (Exhibits 19-F, 20-F, 24-F, 28-F, 29-F and 32 -F). On each occasion Claimant was treated and released.

\* \* \*

Howard Belkin, M.D., D.D.S., J.D., a consultative examiner, performed a psychiatric evaluation of Claimant on December 20, 2006 (Exhibit 4-F). Claimant admitted that he was intoxicated at the time of the examination. Dr. Belkin obtained a history from Claimant and conducted a mental status examination. Dr. Belkin diagnosed Claimant with alcohol dependence, alcohol intoxication and an alcohol induced mood disorder, depressed type.

Terrance Mills, Ph.D., a consultative examiner, administered Claimant the WAIS-III intelligence test on February 8, 2007 (Exhibit 10-F). Dr. Mills reported Claimant gave good effort and his overall interactions with Claimant were positive. Claimant achieved a Verbal IQ score of 86, a Performance IQ score of 79 and a Full Scale IQ score of 81. Dr. Mills stated Claimant's Full Scale IQ score places him in the low average range of intellectual functioning. Dr. Mills believed the test results to be valid.

Claimant has treated at Detroit Central City, a community mental health center, since April 2007 (Exhibits 22-F, 23-F, 3l-F and 33-F). Treatment has consisted of therapy and medication management. The

records indicate Claimant continued to drink alcohol while a patient at this facility, but was making efforts to curtail his drinking. In March 2008, Claimant was petitioned for hospitalization because of suicidal ideations (Exhibit 23-F). In April 2008, Claimant's psychiatrist noted a positive response by Claimant due to a change in his medication. In July 2008, Claimant reported that he was doing well and was earning money by babysitting his 5-year-old niece. In December 2009, Claimant reported, "I feel stable when I take my medication" (Exhibit 33-F). Claimant denied current substance or alcohol use at this visit.

\* \* \*

Prior to July 13, 2010, the medical records and the testimony of Claimant describing his limitations demonstrate that such limitations would not interfere with his ability to function independently, appropriately, effectively, and on a sustained basis. These allegations were considered and found inconsistent with the objective medical findings in the record. Consideration has also been given to the reports of the state agency medical consultants as well as to other treating, examining, and non-examining medical sources.

\* \* \*

In reaching this conclusion, it is found that beginning on July 13, 2010, Claimant's allegations regarding his symptoms and limitations are generally credible. Claimant testified that he stopped drinking alcohol in April 2009. Despite stopping drinking, Claimant's mental and physical health problems continued to worsen. Claimant testified that he rarely leaves the house and when he does he has significant panic attacks.

Sameer Sawalha, M.D. provided a statement of Claimant's ability to perform work activities dated July 13, 2010 (Exhibit 36-F). Dr. Sawalha indicated he had been treating Claimant since October 2008. Based upon his treatment of Claimant, including laboratory studies and clinical findings, Dr. Sawalha was of the opinion

> Claimant was unable to work. Dr. Sawalha reported that
> Claimant's conditions require him to elevate his legs and
> that he requires a cane to ambulate when his gout flares
> up. Claimant is limited in his ability to lift more than 10
> pounds and he has to lie down during the day to relieve
> his pain.
>
> The testimony and the objective medical evidence
> support the residual functional capacity defined above
> beginning July 13, 2010.

(Dkt. 9-2, Pg ID 57-59).  Critically missing from the ALJ's analysis is any

discussion as to why July 13, 2010 was selected as the onset date, particularly with

respect to plaintiff's mental impairments.  While the ALJ accepted Dr. Sawalha's

conclusions, he failed to point to anything in Dr. Sawalha's treating records to

support the conclusion that July 13, 2010 is when plaintiff's functional limitations

precluded him from working.  Were there evidence of a particular worsening of

plaintiff's condition on this date, such as a trip to the emergency room or the

diagnoses of some new impairment, perhaps the selection of this date would make

sense, but the ALJ points to nothing in the medical evidence of record that

supports this conclusion.

The Commissioner contends that the ALJ's selection of this date is

appropriate because (1) the record contains no medical opinions prior to July 2010

that contradict the opinions on which the ALJ relied; and (2) prior to  the 2010

opinion, nothing in Dr. Sawalha's notes suggests the presence of physical or

mental limitations that would prevent plaintiff from engaging in substantial gainful activity.  (Tr. 393, 515-26).  However, all of the opinions offered before July 2010 regarding plaintiff's mental limitations were performed *years* before Dr. Sawalha offered his opinions and long before plaintiff began to receive regular psychiatric treatment.  For example, the report from Dr. Belkin is from December 2006, nearly four years before Dr. Sawalha offered his opinions.  The psychological testing for mental retardation by Dr. Mills is from February 2007, which is only marginally relevant given that it only addresses cognitive issues not the full spectrum of mental health impairments, was performed well over three years before Dr. Sawalha's opinion.  Finally, the PRTF completed by Dr. Khademian, on which the ALJ relied so heavily to determine that plaintiff's mental impairments before July 13, 2010 were not disabling, was completed on March 20, 2007, over three years before Dr. Sawalha's opinion.  None of this evidence explains what happened between March 2007 and July 2010 regarding plaintiff's mental health and why the ALJ found July 13, 2010 to be the onset date, other than the fact that July 13, 2010 is the day on which Dr. Sawalha happened to complete functional capacity form.

According to the Commissioner, the ALJ pointed to medical evidence of records which reflected a significant deterioration in his condition by July 2010. (Tr. 19-20, citing Tr. 637-39, 708-13, 715-18).  The latter two records identified

by the Commissioner in support of this argument are the two post-remand opinion

forms completed by Dr. Sawalha and plaintiff's treating psychologist in July 2010.

Again, nothing in these reports documents some sudden deterioration in plaintiff's

mental condition at this point.  Rather, the timing merely reflects that these

opinions were obtained in the post-remand period (the remand order was issued in

December 2009) and before the ALJ issued his decision after the second hearing

(October 18, 2010).  The Commissioner also points to a counseling session note

on June 28, 2010 where plaintiff was reported to be "extremely paranoid and

agoraphobic." (Dkt. 9-11, Pg ID 687-689).  It certainly does appear that plaintiff

was mentally in poor shape at this point.  However, the ALJ does nothing in his

opinion to support his line of demarcation, particularly in light of the extensive

therapy records from Detroit Central City dating back to 2008, including multiple

assessment by psychiatrists, in addition to regular treatment with therapists.  (Dkt.

9-11, Pg ID 711, 732).  Notably, the ALJ mentions no therapy records in his

decision beyond December 2009.  Thus, it does not appear that the ALJ actually

relied on the psychiatric treatment records to determine that July 13, 2010 was the

appropriate onset date.

Neither the undersigned nor the ALJ are psychiatric professionals and this

seems to be the precise circumstance where the ALJ might have benefitted from

consulting a medical expert regarding plaintiff's onset date.  *McClanahan*, 474

F.3d at 837 (6th Cir. 2006) (SSR 83-20 contemplates calling a medical expert when "there is no development of the medical record on which the ALJ can rely to ascertain onset.").[3]  Or, more simply, it seems that an opinion by plaintiff's treating psychiatrist who could offer an acceptable medical opinion of his functional mental limitations based on longitudinal treatment of plaintiff, would have been the best source of information for the ALJ in determining plaintiff's on-set date.  In addition, rather than assuming (without any apparent support in his treatment records) that Dr. Sawalha (and plaintiff's therapist) meant that plaintiff functional limitations began in July 2010, it would have been appropriate for the ALJ to contract these treating physicians to clarify this point or to examine their treatment records in some detail in his decision so that the Court could determine

---

[3]  The undersigned is not suggesting that the failure to use a medical expert was, by itself, necessarily reversible error.  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (The decision to call a ME is generally within the ALJ's discretion.); *Young v. Comm'r of Soc. Sec.*, 2011 WL 2923695, *6 (S.D. Ohio 2011) (The court may overturn the ALJ's decision only if it appears that using a medical expert was "necessary-rather than simply helpful-in order to allow the ALJ to make a proper decision.") (citations omitted). As explained in SSR 96-6p, an ALJ must obtain an new medical expert opinion when additional medical evidence is received and the ALJ believes that the new evidence may change the state agency medical or psychological consultant's findings that the impairment is not equivalent in severity to any impairment in the listings.  *See Jones v. Astrue*, 2012 WL 3598814, *16 (M.D. Tenn. 2012). It is not clear from the ALJ decision whether any such consideration was given.  The undersigned notes again that the present circumstance is not one where a handful of medical records came in after the state agency experts offered their opinions.  Rather, over three years had passed, plaintiff underwent extensive treatment, two new treating physician opinions were offered, and the onset date is entirely unclear from the record.  And, such an opinion could be especially helpful when the ALJ concludes that, at some point, the objective medical evidence supports a finding of equivalence (*see Lyke v. Astrue*, 2011 WL 2601429, *6 (M.D. Tenn. 2011) or where the medical evidence of records shows a worsening of the plaintiff's condition (*see Mills v. Comm'r of Soc. Sec.*, 2012 WL 1715042, *10 (S.D. Ohio 2012).

if the ALJ's decision regarding the onset date is supported by substantial evidence. Unfortunately, the undersigned can only guess as to what evidence in the record supports the ALJ's decision. This the Court cannot do. For these reasons, this matter must be remanded for the ALJ to re-evaluate plaintiff's disability onset date.

## IV.   RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 29, 2012         s/Michael Hluchaniuk
                                 Michael Hluchaniuk
                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 29, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: David B. Grant, Judith E. Levy, AUSA, and the Commissioner of Social Security.

                                 s/Darlene Chubb
                                 Judicial Assistant
                                 (810) 341-7850
                                 darlene_chubb@mied.uscourts.gov